Case No. 24-40160

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

State of Texas; State of Alabama; State of Alaska; State of Arkansas; State of Florida; State of Idaho; State of Iowa; State of Kansas; Commonwealth of Kentucky; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of Nebraska; State of Ohio; State of South Carolina; State of Tennessee; State of Utah; State of West Virginia; State of Wyoming; State of Oklahoma,

*Plaintiffs-Appellants*,

*v.*

United States Department of Homeland Security; Kristi Noem, Secretary, U.S. Department of Homeland Security; U.S. Citizenship and Immigration Services; Kika Scott, Acting Director of U.S. Citizenship and Immigration Services; U.S. Customs & Border Protection; Troy Miller, Senior Official Performing the Duties of the Commissioner, U.S. Customs and Border Protection; United States Immigration and Customs Enforcement; Tae D. Johnson, Acting Director, U.S. Immigration and Customs Enforcement,

*Defendants-Appellees,*

Valerie Laveus; Francis Arauz; Paul Zito; Eric Sype; Kate Sugarman; Nan Langowitz; German Cadenas,

*Appellees.*

On Appeal from the United States District Court
for the Southern District of Texas, Victoria Division
(USDC No. 6:23-CV-7)

## INTERVENOR APPELLEES' OPPOSITION TO APPELLANTS' MOTION TO VACATE AND DISMISS THE ORDER BELOW

*Monika Y. Langarica, Ahilan Arulanantham, Talia Inlender, Sofía López Franco*
*Center for Immigration Law and Policy, UCLA Law*
*385 Charles E. Young Dr., E., Box 951476*
*Los Angeles, CA 90095*
*(310) 983-3345*

*(Additional Counsel Listed on Signature Block)*

For over two years, Intervenor Defendants have successfully litigated this suit to defend their interests in the Department of Homeland Security's ("DHS's") humanitarian parole program for qualifying individuals from Cuba, Haiti, Nicaragua, and Venezuela ("CHNV Program"). That litigation resulted in Judge Tipton's March 8, 2024, order and judgment finding that Texas failed to prove injury in support of Article III standing, as well as a subsequent order denying Texas's request for reconsideration. ROA.11511–11541, 11542–11543, 11627–11634. While Intervenor Defendants have no objection to Texas dismissing its appeal, vacatur of Judge Tipton's well-reasoned decisions is inappropriate under *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), and its progeny. The reason is simple: Even if this Court accepts Texas's "suggestion of mootness," Intervenor Defendants, who were a prevailing party below, have not caused the alleged mootness. Nor has Texas otherwise carried its burden to demonstrate "equitable entitlement to the extraordinary remedy of vacatur." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26 (1994). This Court should therefore decline Texas's request to vacate the decision below.

## BACKGROUND

This case arises from Texas's failed challenge to the CHNV Program. In October 2022, the Biden administration implemented a parole program to respond to an increase in Venezuelan migrants encountered near the Southwest border. ROA.14559–14570. This program permitted certain individuals to forgo the perilous journey to the

1

Southwest border after going through a rigorous, case-by-case application process and passing all background checks and vetting. ROA.14560, 14567–14568. Within one week of the program's announcement, encounters of Venezuelan migrants at the Southwest border dropped from more than 1,100 per day to fewer than 200 per day. ROA.13409-13410 ¶ 20. Building upon this tremendous success, DHS announced a continued parole process for Venezuela and similar parole processes for individuals from Cuba, Haiti, and Nicaragua. ROA.13411 ¶ 24.

Total migration from CHNV countries plummeted as soon as the CHNV Program went into effect. ROA.11528; *see also* ROA.13859–13862 (showing drop from 91,369 to 22,120 land border encounters of individuals from CHNV countries between December 2022 and January 2023). Despite this reality, on January 24, 2023, Texas and nineteen other states filed this lawsuit, claiming injury from what they anticipated would be an increase in foreign migration to the states caused by the CHNV Program (resulting in alleged associated costs). ROA.65–103.

Shortly after Texas filed suit, Intervenor Defendants—a group of seven U.S. citizens seeking to sponsor through the CHNV Program their close relatives, longtime friends, and individuals with whom they share deep religious and humanitarian connections—successfully intervened. ROA.7781–7803, 7966–7975. Since Judge Tipton granted their motion to intervene on April 19, 2023, Intervenor Defendants have actively participated in every aspect of this litigation.

After the close of discovery in the case and following the Supreme Court's decision in *United States v. Texas*, 599 U.S. 670 (2023) (holding Texas lacked standing to challenge DHS's prosecutorial discretion policy), Intervenor Defendants filed a motion to dismiss for lack of standing. ROA.9604–9630. Judge Tipton consolidated the motion to dismiss and the preliminary injunction motion with a two-day bench trial held on August 24-25, 2023. ROA.11946–11947.

On March 8, 2024, following post-trial briefing, Judge Tipton dismissed the complaint for lack of standing. That is, Intervenor Defendants prevailed. Judge Tipton issued a thirty-one-page Memorandum Opinion and Order and Final Judgment dismissing the complaint because the overwhelming evidence in the record demonstrated that Texas—the only Plaintiff state that even attempted to prove standing—was wrong when it predicted that the CHNV Program would increase the costs to the State, because in fact *fewer* CHNV nationals entered the U.S. after the CHNV Program's inception. ROA.11511–11541; 11542–11543. Texas therefore failed to prove its standing. *Id.*

Texas filed a notice of appeal on March 11, 2024. ROA.11544–11549. More than three weeks later, Texas requested that Judge Tipton reconsider his decision pursuant to Federal Rule of Civil Procedure 59(e), ROA.11559–11580, which Intervenor Defendants opposed, ROA.11584–11594; 11596–11612. On May 28, 2024, Judge Tipton issued an eight-page Memorandum Opinion and Order agreeing with

Intervenor Defendants and denying Texas's attempt to "do precisely what Rule 59(e) forbids: re-litigate the same legal theories and present the same arguments" rejected by the court. ROA.11627–11634; 11630.

This appeal followed. The parties concluded briefing on the merits before the Court and were set for oral argument. However, on January 20, 2025, there was a change in administration. That day, President Trump issued an executive order directing the DHS Secretary to terminate the CHNV Program. Exec. Order No. 14165, Securing Our Borders, 90 Fed. Reg. 8467 (Jan. 20, 2025). As a result of that order, Federal Defendants, with consent of the other parties, moved to hold the case in abeyance for ninety days. Dkt. 268. This Court granted that request. Dkt. 273-2.

Since January 20, 2025, the Trump administration has taken additional steps to terminate the CHNV Program and rescind existing parole grants for all individuals who entered through it. *See* Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025). While Texas fails to acknowledge it, those efforts are the subject of ongoing litigation. *Svitlana Doe v. Noem*, No. 25-cv-10495-IT (D. Mass. filed Feb. 28, 2025).

Texas now asks this Court to dismiss its appeal as moot and vacate the judgment below. Dkt. 283.

**ARGUMENT**

Texas has not even attempted to make the necessary showing that this case is moot. *See FBI v. Fikre*, 601 U.S. 234, 241 (2024) (citing *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). But the Court need not resolve the question of mootness in order to reject Texas's request for vacatur because, even assuming the case is moot, at least one of the prevailing parties below (Intervenor Defendants) took no action to cause the alleged mootness, and Texas has otherwise failed to establish its entitlement to this extraordinary remedy.

**I.      Vacatur is unwarranted where the alleged mootness was neither the result of happenstance nor the unilateral action of the party who prevailed below.**

The Supreme Court has made clear that vacatur of a district court order is the exception, not the rule, where a case becomes moot on appeal. *U.S. Bancorp Mortgage Co.*, 513 U.S. at 26 (describing vacatur as an "extraordinary remedy"); *see also Staley v. Harris Cnty., Tex.*, 485 F.3d 305, 313 (5th Cir. 2007) (declining to order the "extraordinary remedy" of vacatur) (quoting *U.S. Bancorp. Mortgage Co.*, 513 U.S. at 26). Indeed, there are only two instances in which courts generally grant vacatur as a matter of "established practice." *Munsingwear*, 340 U.S. at 39. Neither applies here.

First, courts generally vacate when a lower court's judgment is rendered unreviewable by "happenstance," *id.* at 40, that is "unattributable to any of the parties," *Karcher v. May*, 484 U.S. 72, 83 (1987). Texas makes no argument that any alleged

5

mootness in this case resulted from "happenstance." Nor could it. DHS's decision to terminate the CHNV Program is directly attributable to the actions of the new Presidential administration, not to any shift in circumstances outside of Federal Defendants' purview. *Cf. Murphy v. Fort Worth Indep. Sch. Dist.*, 334 F.3d 470, 471 (5th Cir. 2003) (finding vacatur appropriate where plaintiff's graduation from school during the course of the appeal mooted claims).

Second, the Supreme Court has held that "'[v]acatur is in order' when 'mootness occurs through . . . the unilateral action of the party who prevailed in the lower court.'" *Azar v. Garcia*, 584 U.S. 726, 729 (2018) (quoting *Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71-72 (1997)) (quoting in turn *U.S. Bancorp Mortgage Co.*, 513 U.S. at 23). Texas relies almost entirely on this line of doctrine in its Motion, Dkt. 283 at 3–6, but its argument suffers from a fundamental flaw: It ignores the fact that *Intervenor Defendants* were also a prevailing party below, and they took no action—unilateral or otherwise—to moot this appeal. Accordingly, the equitable considerations that generally counsel in favor of vacatur where a prevailing party has taken unilateral action to moot an appeal are not only inapplicable here, but instead weigh *against* vacatur.

Texas does not—because it cannot—challenge Intervenor Defendants' status as a prevailing party. *See* Dkt. 283. Nor does Texas argue that Intervenor Defendants have taken any action to moot this case. Indeed, such an argument would fall flat in light of Intervenor Defendants' strong humanitarian interest in the continuation of the CHNV

Program—an interest that Judge Tipton correctly recognized was distinct from that of Federal Defendants when he granted their motion to intervene as a party to this lawsuit. *See* ROA.7966–7975.

Because Intervenor Defendants—not just Federal Defendants—were a prevailing party below, the equitable considerations favoring vacatur where the winning parties take unilateral action to moot an appeal simply do not apply here. That doctrine is animated by the common-sense principle that a plaintiff should not be permitted "to obtain a favorable judgment, take voluntary action that moots the dispute, and then retain the benefit of the judgment." *Azar*, 584 U.S. at 729 (citation omitted). In short, a party cannot have its cake and eat it too. But that principle has no application to Intervenor Defendants, as they took no action to moot this appeal, and have no desire to wipe away the district court's well-reasoned decisions—decisions that Intervenor Defendants won at trial.

While no case squarely addresses vacatur in the context of two prevailing parties whose interests diverge on appeal, the equitable principles underlying *Munsingwear* counsel against vacatur here. If one party must be forced to bear the consequences of Federal Defendants about-face to moot this lawsuit, it should be Texas, the party that lost below, not Intervenor Defendants, who prevailed. The Supreme Court has considered—and refused—a similar request in a case that makes clear Intervenors are relevant parties for the purposes of vacatur analysis. *See Karcher*, 484 U.S. at 83. In

7

*Karcher*, public school children and their parents challenged the constitutionality of a New Jersey statute providing for the observance of one minute of silence at the beginning of the school day. *Id.* at 74–77. When the state's Attorney General and the named defendants refused to defend the statute, two New Jersey legislators intervened in the case in their official capacities to do so on behalf of the legislature. *Id.* at 75. The children and parents prevailed: the district court held the statute unconstitutional, and the Court of Appeals affirmed that judgment. *Id.* at 75–76. The two legislators appealed to the Supreme Court, but while the appeal was pending, both lost their positions as presiding legislative officers. *Id.* at 76. Their replacements withdrew the legislature's appeal. *Id.* Still, the legislators pressed the Court to permit them to pursue the case in their individual capacities or, in the alternative, to dismiss and vacate the judgments below under *Munsingwear*. *Id.* at 81-82. The Supreme Court dismissed the case but refused to vacate the judgments below, finding *Munsingwear* inapplicable where "[t]his controversy did not become moot due to circumstances unattributable to any of the parties." *Id.* at 83 (holding the controversy ended when the New Jersey Legislature, as proper Intervenors in the case, declined to pursue the appeal).

Here, too, any alleged mootness in this controversy is attributable to a party—Federal Defendants—who, while having prevailed below, now want to terminate (rather than defend) the CHNV Program. However, Intervenor Defendants—who also prevailed below—have taken no steps to moot this case. Texas should not be permitted

8

to reap the benefits of vacatur where Intervenor Defendants—who prevailed at trial below— did nothing to render this case moot. *Cf. United States v. Hamburg-Amerikanische Packetfahrt-Actien Gesellschaft*, 239 U.S. 466, 478 (1916) ("[T]he judgment below should not be permitted to stand when, without any fault of the [petitioner], there is no power to review it upon the merits."); *Goldin v. Bartholow*, 166 F.3d 710, 719 (5th Cir. 1999) (describing *Munsingwear* doctrine as "an equitable one, justified as a means of avoiding the unfairness of a party's being denied the power to appeal . . . by factors beyond its control").

In short, neither happenstance nor any action on the part of Intervenor Defendants, a prevailing party below, warrant vacatur as a matter of "established practice" under *Munsingwear.* 340 U.S. at 39.

## II. Texas has otherwise failed to meet its burden to establish equitable entitlement to vacatur.

Texas's remaining arguments similarly fall short of meeting its burden to establish its "claim to the extraordinary equitable remedy of vacatur." *U.S. Bancorp Mortgage Co.*, 513 U.S. at 26. "Per historical tradition, a court that is asked to exercise its equitable authority to vacate a lower court's judgment must determine, in essence, whether it is 'most consonant to justice' for the judgment to 'remain undisturbed' or be vacated." *Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 16 (2023) (Jackson, J., concurring in judgment) (citing *South Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co.*, 145

9

U.S. 300, 301–302 (1982)). Here, each of the relevant factors for equitable relief counsel in favor of leaving Judge Tipton's orders and judgment undisturbed.

First, while Texas belabors the fact that it played no role in mooting the case, Dkt. 283 at 6–7, "as the party seeking relief from the status quo of the appellate judgment," Texas must do more than "demonstrate" it does not bear "equivalent responsibility for the mootness," *U.S. Bancorp Mortgage Co.*, 513 U.S. at 26. Texas cannot meet that burden where it fails to mention—much less grapple with—the fact that vacatur would affect the rights of Intervenor Defendants who prevailed below after zealously defending the CHNV Program, and who played no part in the program's termination. Granting vacatur based on case law involving a sole prevailing party would ignore the unique circumstances of this appeal. *Cf. Young v. Higbee*, 324 U.S. 204, 209 (1945) ("Equity looks to the substance and not merely to the form."). Here, it is Intervenor Defendants—not Texas—who should not be denied their favorable judgment because of the action of Federal Defendants. *See Staley*, 485 F.3d at 313 ("Should we vacate, Staley will be denied her judgment, not because her claim lacked merit, nor because of her choices or acts, but for the reason that Harris County, by its 'last-minute' voluntary acts, removed (temporarily) the monument from public viewing.").

Second, while Texas argues that changes in law favor vacatur under equitable principles, Dkt. 283 at 6–7, none of the cited cases help Texas meet its burden to

10

demonstrate that *this* case warrants vacatur, *see Azar*, 584 U.S. at 729 ("Because this practice is rooted in equity, the decision whether to vacate turns on the conditions and circumstances of the particular case." (internal citations omitted)). Texas's cases are readily distinguishable. In some, the court granted vacatur where a government entity that was *not* a party to the lawsuit took action that mooted the claim. *See Shoemate v. Miss. Dep't of Corr.*, 668 F. App'x 124, 125 (5th Cir. 2016) (per curiam) (Mississippi legislature, which was not a party, passed a law mooting the case); *AT&T Commc'ns of Sw., Inc. v. City of Austin*, 235 F.3d 241, 244 (5th Cir. 2000) (ordering vacatur where Texas House bill passed and superseded Austin city ordinance at issue in the litigation). In others, no party opposed vacatur and so the court had no occasion to weigh the equities. *See* Response to the United States's Motion to Vacate and Remand with Directions to Dismiss as Moot, *United States v. Microsoft Corp.*, 584 U.S. 236 (2018) (No. 17-2); Oral Argument, *Bd. of Trs. of Glazing Health & Welfare Tr. v. Chambers*, No. 16-155588, 2019 WL 4074747 (9th Cir. June 18, 2019) ("We're okay with vacating."). In the final case, the D.C. Circuit relied heavily on the "presumption of integrity that attaches to legislative action" to find that intervening legislation justified dismissal with vacatur. *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 649 (D.C. Cir. 2011) (citing "the difficulties that separation of powers creates for attributing one branch's actions to another" (internal citations omitted)). Here, of course, Federal Defendants are a party to the lawsuit, Intervenor Defendants who prevailed below oppose vacatur, and there has been no

11

intervening federal legislation. Whatever equitable considerations may have been at play in those other cases simply do not apply here.

Third, the fact that Texas is not "subject to a mandatory judgment or any injunctive relief" counsels *against* vacatur, not for it, as Texas would have this Court find. *See* Dkt. 283 at 8. This Circuit has made clear that vacatur of a money judgment or ongoing injunction may be appropriate to avoid unfairness when a case becomes moot pending appeal. *See Pederson v. La. State Univ.*, 213 F.3d 858, 883 (5th Cir. 2000) ("To maintain the status quo by leaving the district court's injunctive order in place would work an injustice to Appellees, who, through no fault of their own, would be forced to comply with an order the merits of which they are powerless to contest."). But the same equitable considerations are not at play where, as here, the Court is assessing whether to vacate an order and judgment that imposes neither a financial obligation nor a compliance burden on the losing party. *See Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 838 (5th Cir. 2023) (finding equitable considerations favor vacating the permanent injunction, but leaving the order and judgment otherwise undisturbed).

Finally, the public interest strongly favors preserving the well-reasoned district court decision below. Because vacatur is a form of equitable relief, courts must "take account of the public interest." *Freedom From Religion Found.,* 58 F.4th at 836 (citing *U.S. Bancorp Mortgage Co.*, 513 U.S. at 26). As this Circuit has emphasized, "the value that

judicial precedents give to the legal community as a whole" is a major "equitable factor[] that bear[s] on the public interest" analysis. *Freedom From Religion Found.*, 58 F.4th at 836. (internal quotation marks omitted). This reflects the Supreme Court's instruction that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *U.S. Bancorp Mortgage Co.,* 513 U.S. at 26 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27 (1993) (Stevens, J., dissenting)).

Here, Intervenor Defendants established a comprehensive record below—including through the presentation of experts, a trial witness, and extensive briefing—which all parties and the judge interrogated at trial and in pre- and post-trial briefing. Judge Tipton's well-reasoned, thirty-one-page decision discusses issues of crucial and ongoing public importance, including questions of state standing. Accordingly, the public interest strongly favors leaving Judge Tipton's rulings undisturbed.

Texas has failed to meet its burden to establish equitable entitlement to the "extraordinary remedy" of vacatur. *U.S. Bancorp Mortgage Co.*, 513 U.S. at 26. This Court should therefore decline to vacate Judge Tipton's orders and final judgment.

## CONCLUSION

For the foregoing reasons, this Court should reject Texas's request to vacate the district court's order dismissing the suit, its final judgment, and its order denying post-judgment relief.

Dated: May 12, 2025            Respectfully submitted,

*s/ Esther H. Sung*
Esther H. Sung
Karen C. Tumlin
Laura Flores-Perilla
Brandon Galli-Graves
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323)316-0944

Talia Inlender
Monika Y. Langarica
Ahilan Arulanantham
Sofía López Franco
Center for Immigration Law and Policy
UCLA Law
385 Charles E. Young Dr. E., Box 951476
Los Angeles, CA 90095
(310)983-3345

Javier Hidalgo
RAICES
P.O. Box 786100
San Antonio, TX 78278
(210)610-6143

**CERTIFICATE OF SERVICE**

I, Esther Sung, hereby certify that on May 12, 2025, I caused the foregoing Intervenor Appellees' Opposition to Appellant's Motion to Vacate and Dismiss the Order Below to be electronically filed with the Clerk of the Court for the U.S. Court of Appeals for the Fifth Circuit via the CM/ECF system, which will send a notice of this filing to counsel for Plaintiff-Appellants and Federal-Defendant-Appellees.

*s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323)316-0944

*Counsel for Intervenor-Defendant-Appellees*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS**

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify the following:

1. The foregoing response complies with the type-volume limitations of Rule 27(d)(2)(A). The response contains 3,225 words according to the Microsoft Word counting function, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2. The foregoing response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The response has been prepared in a proportionately spaced typeface using Microsoft Word in 14 Point Garamond type style.

*s/ Esther H. Sung*
Esther H. Sung
Justice Action Center
P.O. Box 27280
Los Angeles, CA 90027
(323)316-0944

*Counsel for Intervenor-Defendant-Appellees*